# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kimberly Ann Sones, : 
          Petitioner : 
           : 
      v. : No. 432 C.D. 2019
           : Argued: February 9, 2021
Unemployment Compensation : 
Board of Review, : 
          Respondent : 


BEFORE:    HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE J. ANDREW CROMPTON, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CROMPTON              FILED: March 9, 2021


Kimberly Ann Sones (Claimant) petitions for review from an order of the Unemployment Compensation Board of Review (Board), finding her ineligible for unemployment compensation (UC) benefits pursuant to Section 402(e) of the UC Law (Law)[1] for failing to respond to the request of Nicole Carnicella, DMD, PC (Employer) to produce a fitness-for-duty letter,[2] after Claimant's attorney notified Employer that Claimant was suffering from macular degeneration. Claimant's

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) of the Law states, in pertinent part, that "an employe shall be ineligible for compensation for any week—[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act." 43 P.S. §802(e).

[2] Also referred to, alternatively, as a "fit-for-duty" letter.

attorney noted that Claimant's condition was a result of overexposure to high energy, visible blue light from a curing light used as part of Claimant's duties with Employer. Certified Record (C.R.), Item No. 4.

## I.    Background

Claimant, an expanded functional dental assistant (EFDA), last worked for Employer on February 1, 2018, and was discharged for failing to provide documentation from her physician regarding her fitness for duty.  C.R., Item No. 8. Claimant applied for UC benefits.  The UC Service Center determined that Claimant was eligible for benefits pursuant to Section 401(d)(1) of the Law,[3] 43 P.S. §801(d)(1), but denied her benefits under Section 402(e) of the Law, 43 P.S. §802(e), for willful misconduct.  *Id*.

Claimant appealed the UC Service Center's determination and a hearing was held before a UC referee on May 31, 2018.  The UC referee made the following findings.  Claimant was off work for about two weeks due to a shoulder surgery she underwent on February 5, 2018.  Referee Decision/Order, 6/4/2018, Finding of Fact (F.F.) No. 2.  On February 6, 2018, Claimant notified Employer that

---

[3] Section 401(d)(1) of the Law reads:

Compensation shall be payable to any employe who is or becomes unemployed, and who –

. . . .

(d)(1) Is able to work and available for suitable work: Provided, that no otherwise eligible claimant shall be denied benefits for any week because he is in training with the approval of the secretary nor shall such individual be denied benefits with respect to any week in which he is in training with the approval of the secretary by reason of the application of the provisions of this subsection relating to availability for work or the provisions of section 402(a) of this act relating to failure to apply for or a refusal to accept suitable work.

43 P.S. §801(d)(1).

she had been diagnosed with macular degeneration caused by exposure to high energy visible blue light in her workplace. F.F. No. 3. On February 15, 2018, Employer requested Claimant provide a fitness-for-duty letter. F.F. No. 4. On February 19, 2018, Claimant responded with a letter noting that if she was not invited to return to work at full duty, on or before February 26, 2018, she would consider the omission to be a decision by Employer that her employment had been terminated. F.F. Nos. 5, 6. Employer responded with another letter to Claimant on February 20, 2018, instructing her to provide a fitness-for-duty letter from her treating physician, indicating her prognosis and her status relative to performing her regular duties. F.F. No. 7. "At no time did [Claimant] or her attorney notify [Employer] that [she] would have any difficulties . . . obtaining a fitness for duty letter . . . or that more time would be needed to provide [it]." F.F. No. 8. Claimant was discharged from her employment on February 26, 2018, for failure to provide Employer with the requested letter. F.F. No. 9.

The UC referee affirmed the decision of the Service Center, determining that Claimant was eligible for benefits under Section 401(d)(1) of the Law but that she was ineligible for benefits under Section 402(e) of the Law for her failure to provide a fitness-for-duty letter as directed by Employer. Claimant appealed to the Board.

In its March 1, 2019 Decision and Order, the Board affirmed the Decision/Order of the UC referee. In reaching its conclusion, the Board determined that Claimant "did not present a reason for not providing the fit[ness-]for[-]duty letter. Furthermore, she never expressed that she would have difficulty securing one." C.R., Item No. 15, at 2. In addition, the Board determined that Employer's "request for the [fitness-for-duty] letter was reasonable [and] that . . . Claimant

3

lacked just cause for her non-compliance with the directive." *Id.* The Board added that "[i]n this case, there is no evidence to rebut the presumption that [Claimant] is able and available for work. Accordingly, the [C]laimant is eligible for benefits under Section 401(d)(1) of the Law for the weeks at issue." C.R., Item No. 15, at 3. Nevertheless, the Board concluded that "[C]laimant is ineligible for benefits under the provisions of Section 402(e) of the Law," ordering "[t]he decision of the [r]eferee is affirmed and benefits are denied." *Id.* Claimant now petitions this Court for review.[4]

## II.    Arguments

### A. Claimant's Arguments

Claimant argues that the Board committed an error of law in determining she acted with willful misconduct because she acted in good faith by responding to Employer's request for a fitness-for-duty letter by providing records from her medical providers which reflected the same. Claimant's Br. at 12. Claimant contends that producing a fitness-for-duty letter would cost thousands of dollars and, thus, it was not feasible for her to provide one. Thus, she presented her medical records as an alternative. Claimant's Br. at 13. Claimant contends that the UC referee and the Board "capriciously disregarded material competent evidence that . . . the fit[-]for[-]duty letter was not provided because it was economically not

---

[4] Our review is limited to determining whether the Board's findings were supported by substantial evidence, whether the Board committed an error of law, or whether the Board violated Claimant's constitutional rights. *Dep't of Corr. v. Unemployment Comp. Bd. of Rev.*, 943 A.2d 1011 (Pa. Cmwlth. 2008). The Board's findings of fact are conclusive on appeal as long as they are supported by substantial evidence. *Grieb v. Unemployment Comp. Bd. of Rev.*, 827 A.2d 422 (Pa. 2003). "Substantial evidence is defined as evidence a reasonable mind might accept as sufficient to support the conclusion reached." *Frimet v. Unemployment Comp. Bd. of Rev.*, 78 A.3d 21, 26 n.7 (Pa. Cmwlth. 2013).

4

feasible, that she would have difficulty securing one, and that she furnished medical records to her physician employer in the alternative." *Id.*

Further, Claimant maintains that Employer was a dentist, a physician who had familiarity with medical records, "a knowledge of medical terms, and an understanding of medical terminology superior to a non-physician employer," and thus, she "had the capacity and resources available to comprehend and appreciate the information contained in the medical records furnished by [Claimant] sufficient to make an employment[-]related decision." Claimant's Br. at 14.

Claimant argues that she did not act with wanton and willful disregard for Employer's interests. Rather, she simply provided Employer with medical records, in lieu of a fit-for-duty letter, which contained sufficient information for Employer to make a decision about her employment. Claimant adds that the evidence of record does not support a determination that she acted in deliberate violation of Employer's rules by providing the medical records, instead of a letter, and that she did not disregard standards of behavior which an employer can expect of an employee by providing the same. In addition, Claimant asserts the record does not support that she acted with negligence "which manifests culpability, wrongful intent, evil design, or intentional or substantial disregard for [Employer's] interests or [Claimant's] duties and obligation by furnishing [Employer] with medical records containing [sufficient information for Employer] to make an employment decision rather than providing [Employer] the technical nicety and form of a medical narrative." Claimant's Br. at 16-17. Thus, Claimant asserts that the record does not support a determination that her behavior rose to the level of willful misconduct within the meaning of Section 402(e) of the Law, 43 P.S. §802(e).

5

## B. Board's Arguments

In its response to Claimant's arguments, the Board maintains that Employer is not an ophthalmologist and does not have the expertise to determine whether Claimant's macular degeneration would impair her ability to perform her job as an EFDA. Board's Br. at 4-5. Employer's review of the medical records provided by Claimant led Employer to become concerned that Claimant was experiencing blurred vision, trouble reading and seeing pictures, and issues with color, which, in turn, were leading to problems filling cavities and matching tooth color with shade guides. Hearing Transcript, 5/31/2018, at 5-6, C.R., Item No. 11. The Board notes that "Employer testified that if Claimant had provided a letter from a doctor, identifying what parts of Claimant's job she was able to perform and which parts she could not, and had the limitations of Claimant's ability to perform her job been minimal, Employer would have retained Claimant as an employee." Board's Br. at 5. In this regard, Employer requested a fitness-for-duty diagnosis from Claimant's treating physician and informed Claimant that without such an assurance, Employer "would not allow Claimant to jeopardize the well-being of Employer's patients." Board's Br. at 6.

The Board states that "Claimant sent Employer 51 pages of ophthalmology and medical records – none of which contained her doctor's assessment of Claimant's ability to perform the functions of her job." Board's Br. at 8. The Board acknowledges that the term "willful misconduct" is not defined in the Law but that Pennsylvania courts have defined it as

> an act of wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior which the employer has a right to expect of an employee,

6

or negligence indicating an intentional disregard of the employer's interests of or the employee's duties and obligations to the employer.

Board's Br. at 9 (citing *Frumento v. Unemployment Comp. Bd. of Rev.*, 351 A.2d 631, 632 (Pa. 1976) (citing *Moyer v. Unemployment Comp. Bd. of Rev.*, 110 A.2d 753 (Pa. Super. 1955)).

The Board asserts that "an employee's deliberate refusal to comply with her employer's request or directive can constitute willful misconduct." Board's Br. at 9. "The employer has the burden of proving the directive was reasonable and the claimant has the burden of proving good cause for failing to comply. . . ." *Id.* (citing *Legare v. Unemployment Comp. Bd. of Rev.*, 444 A.2d 1151 (Pa. 1982)). The Board argues that Claimant does not challenge the reasonableness of Employer's request for a fitness-for-duty letter. She only challenges the conclusion that Claimant did not have good cause for failure to respond to Employer's directive that she provide the same. Board's Br. at 10. The Board adds that it was not reasonable for Claimant to provide her medical records in lieu of the letter because Employer is a dentist, not an ophthalmologist, and she "lacked the qualification[s] to assess Claimant's ability to perform the functions of her job." *Id.*

In regard to Claimant's contention that she could not afford a fitness-for-duty letter, the Board notes that Claimant never informed Employer of the reason she was unable to comply. "Claimant did not inform Employer she could not produce a fit-for-duty letter because of the cost," and "the reason for Claimant's noncompliance was not self-evident." Thus, "Claimant's failure to inform Employer of the reason for her noncompliance negates any good cause Claimant may have had for failing to produce a fit-for-duty letter." Board's Br. at 14-15. The Board adds that, in regard to Claimant's contention that it disregarded Claimant's assertion that she could not afford a fit-for-duty letter, "failure to address Claimant's reason for

7

noncompliance is harmless error and does not warrant reversing the Board's denial of benefits." Board's Br. at 15.

### III. Discussion

We reiterate, at the outset, that the term "willful misconduct" is not defined in the Law, and that our courts have defined it as

> an act of wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interests of or the employee's duties and obligations to the employer.

*Frumento*, 351 A.2d at 632 (citing *Moyer*, 110 A.2d 753).

"If an employer's request is reasonable in the context of the particular employment relationship and the employee's refusal is unjustified, such conduct evidences a disregard of the standards of behavior an employer expects of his employees." *Kretsch v. Unemployment Comp. Bd. of Rev.*, 476 A.2d 1004, 1006 (Pa. Cmwlth. 1984) (citation omitted).

In the present matter, Employer had a justifiable reason for requesting a fit-for-duty letter from Claimant. As an EFDA, Claimant's eyesight is critical to the satisfactory performance of her job. Once Claimant raised the issue of macular degeneration, it was entirely reasonable, in fact incumbent upon Employer, a dentist who must necessarily protect the safety of her clients, to ask Claimant to provide evidence she was fit to perform her job. Further, simply because Employer is a healthcare professional does not mean she is able to interpret records from all medical specialists and all medical specialties. Thus, it was fair for her to ask Claimant to provide a fit-for-duty letter, rather than merely providing raw medical information related to a non-dental specialty.

8

In its decision and order, the Board stated: "[Claimant] did not present a reason for not providing the fit-for-duty letter. Furthermore, she never expressed that she would have difficulty securing one." C.R., Item No. 15, at 2. "[T]he [Board] is the ultimate fact-finder in [UC] matters . . . ." *Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018) (quoting *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008)). "It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made." *Ductmate Indus.*, 949 A.2d at 342. Given that the Board found Claimant never explained to Employer that she would have difficulty producing the requested fit-for-duty letter, Claimant did not establish good cause for failing to produce the letter, and thus, it was harmless error, if error at all, for the Board not to consider Claimant's stated reason for failing to produce the letter. We note here too that Employer requested a fit-for-duty letter on more than one occasion – February 15, 2018 and on February 20, 2018. *See* C.R., Item No. 15, Board's Decision and Order, Finding of Fact 3 and 6. Thus, there was more than one opportunity for Claimant to explain to Employer any difficulties she was having in procuring the letter, and it is also evidence of Employer's willingness to work with Claimant.[5]

---

[5] As further support for the proposition that Employer's request for a fit-for-duty letter was reasonable and that Employer demonstrated a willingness to work with Claimant to ensure a safe return to work, if such a return was possible, we note the following exchange between the UC referee (identified as "R") and Employer (identified as "E") during the May 31, 2018 hearing before the referee:

> R[:] [I]f she would have handed in something from the doctor stating
> something to the effect of she's able to perform this part of her job, . . . these are

**(Footnote continued on next page…)**

The Board did not err in determining Claimant to be ineligible for UC benefits when it determined she engaged in willful misconduct by failing to respond to Employer's request to produce a fit-for-duty letter where genuine safety concerns were at issue. Claimant's failure to provide the letter represented willful disregard of Employer's interests and clear disregard of the standards of behavior which Employer had a right to expect of Claimant, and/or negligence indicating an intentional disregard of Employer's interests. Accordingly, we determine that the Board did not err by affirming the UC referee's determination that Claimant is ineligible for UC benefits, per Section 402(e) of the Law, 43 P.S. §802(e).

## IV. Conclusion

Based on the foregoing, we affirm the order of the Board.

_____
J. ANDREW CROMPTON, Judge

---

the only things that she can't do and they're very minimal that she can't do of her job, could you have brought her back then?

E[:] Absolutely.

Transcript of Testimony, 5/31/18, at 7.

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kimberly Ann Sones,                     :
                    Petitioner          :
                                        :
        v.                              :    No.  432 C.D. 2019
                                        :
Unemployment Compensation               :
Board of Review,                        :
                    Respondent          :

## **O R D E R**

**AND NOW**, this 9th day of March 2021, the March 1, 2019 order of the

Unemployment Compensation Board of Review is **AFFIRMED**.


                            _____
                            J. ANDREW CROMPTON, Judge