Charlene EATON, Petitioner-Appellee,

v.

**IOWA DEPARTMENT OF JOB SERVICE and Answer Iowa, Inc., Respondents-Appellants.**

No. 84–1813.

Court of Appeals of Iowa.

Sept. 24, 1985.

Walter F. Maley, Blair H. Dewey, Joseph L. Bervid, and Deborah A. Dubik, Des

Moines, for respondent-appellant Iowa Dept. of Job Service.

Kay Delafield of Legal Services Corp., Des Moines, for petitioner-appellee.

Considered by OXBERGER, C.J., and SNELL and SACKETT, JJ.

SNELL, Judge.

Petitioner Charlene Eaton worked as a telephone operator for Answer Iowa, Inc. from May 29, 1979 until her discharge on July 25, 1983. In addition to her operator duties, Eaton was required to do bookwork and clean. During her four years of employment Eaton willingly accepted overtime work and only took two days of sick leave.

At the beginning of her employment, Eaton signed an employer form indicating that she understood that she would be subject to discipline if she failed to follow the employer's rules. The form stated that she would be subject do discipline if she failed to monitor all "patched" calls and disconnect them immediately upon completion. (A "patch" is the extension of a phone call from a client's office to the client's home.) The form also stressed that employees were to behave in a courteous and business manner when dealing with clients.

In July of 1981, Eaton received a written warning for her rudeness to a client. In August of 1982, Eaton received another written warning for her failure to disconnect a "patch" which temporarily incapacitated a doctor's phone service. Eaton was apparently cleaning in another room when she failed to make the disconnection. The doctor lodged a complaint with Answer Iowa because he received the call in his home at 4:30 a.m. and he could not make further calls for about twenty minutes. The warning regarding this patch stated that Eaton would be dismissed following another failure to follow her employer's rules.

Answer Iowa was greatly concerned about possibly losing the doctor's business. After Eaton's second warning, Answer Iowa posted a notice for employees on the switchboard which stated that all calls were to be monitored and disconnected immediately upon completion.

In July of 1983, Eaton again failed to disconnect a "patch" for a doctor. The call came in at 3:00 a.m. and because it was not immediately disconnected upon completion, the doctor had to go to a neighbor's phone to call the hospital. Eaton monitored this patch at least once, but was doing bookwork when she failed to promptly disconnect the call. Eaton was discharged after this incident.

Eaton's claim for unemployment benefits was denied by a claims deputy. A hearing officer affirmed the decision concluding that Eaton's continuing failure to monitor "patched" calls constituted misconduct. The Job Service appeal board affirmed the hearing officer by incorporating his findings of fact, reasoning and conclusions of law.

Eaton filed a petition for judicial review. The court reversed the Job Service decision finding that the agency record did not contain substantial evidence of misconduct by Eaton. Job Service appeals from this reversal of the appeal board's decision asserting that the district court improperly substituted its decision for that of the agency.

Our scope of review in cases arising out of the Iowa Administrative Procedure Act is limited to the correction of errors in law. *Budding v. Iowa Dept. of Job Service*, 337 N.W.2d 219, 221 (Iowa Ct.App.1983). We review the decision of the district court, also rendered in an appellate capacity, and determine whether the district court correctly applied the law. *Endicott v. Iowa Dept. of Job Service*, 367 N.W.2d 300, 302 (Iowa Ct.App.1985). "In order to make that determination, this court applies the standards of section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as those of the district court." *Jackson County Public Hospital v. Public Employment Relations Bd.*, 280 N.W.2d 426, 429–30 (Iowa 1979). Iowa Code section 17A.19(8)(f) provides that in a contested case the court shall grant relief from an agency decision which

is unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole. Evidence is substantial when a reasonable person would accept it as adequate to reach a conclusion. *Gipson v. Iowa Dept. of Job Service,* 315 N.W.2d 834, 837 (Iowa Ct.App. 1981). We do not question Answer Iowa's right to terminate Eaton's employment. Our sole task is to determine whether Eaton is entitled to unemployment benefits. *Billingsley v. Iowa Dept. of Job Service,* 338 N.W.2d 538, 540 (Iowa Ct.App.1983).

Iowa Code section 96.5(2) provides that an individual is disqualified for unemployment benefits if Job Service finds that the individual has been discharged for misconduct in connection with the individual's employment.

The Iowa Administrative Code defines "misconduct" as:

[A] deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

370 IAC § 4.32(1)(a). This definition has been accepted by the Iowa Supreme Court as accurately reflecting the intent of the legislature. *Huntoon v. Iowa Dept. of Job Service,* 275 N.W.2d 445, 448 (Iowa 1979) *cert. den.,* 444 U.S. 852, 100 S.Ct. 105, 62 L.Ed.2d 68 (1979). The employer has the burden of proving misconduct. 370 I.A.C. § 4.32(4); *Billingsley,* 338 N.W.2d at 540.

■ In order to establish misconduct that will disqualify an employee from benefits, the employer must prove conduct by the employee consisted of deliberate acts or omissions or evinced such carelessness as to indicate a wrongful intent. *Billingsley,* 338 N.W.2d at 540. In this case, Eaton received three warnings for violations of Answer Iowa's policies. These warnings occurred approximately one year apart. She was terminated upon receiving the third warning. Answer Iowa claims that Easton's failure to perform her job in a satisfactory manner after being repeatedly warned evidences carelessness or negligence to such a degree of recurrence as to manifest a substantial disregard of its interest as Eaton's employer.

■ The misconduct, in order to support a disqualification from unemployment benefits, must be substantial. *Newman v. Iowa Dept. of Job Service,* 351 N.W.2d 806, 808 (Iowa Ct.App.1984); *Budding,* 337 N.W.2d at 222. "Misconduct serious enough to warrant the discharge of an employee is not necessarily serious enough to warrant a denial of benefits." *Newman,* 351 N.W.2d at 808. The focus of the administrative code definition of misconduct is on deliberate, intentional or culpable acts by the employee. *Id.* While the discharge must be based on a current act of misconduct, past acts of misconduct may be considered in determining the magnitude of the current act. 370 I.A.C. § 4.32(8).

■ We believe the employer has failed to show that Eaton's actions which resulted in her discharge amounted to misconduct within the meaning of Iowa Code section 96.5(2). Eaton's failure to disconnect the patch did not result from any inattention or neglect of her job duties. She was doing bookwork which was a part of her required work. There is no showing of overt disregard of her employer's interest nor that her error occurred in other than her good

faith attempt to perform all of the responsibilities of her job. Eaton testified that she did not intentionally do anything to harm Answer Iowa's business. There was no evidence presented of any statements or actions by Eaton which demonstrated a wrongful intent on her part. The record discloses only that on one occasion, three years before her discharge, Eaton was rude to a customer and on two occasions one year apart Eaton failed to disconnect a patch because she became absorbed in her other job duties.

We recognize that Answer Iowa's rule regarding monitoring and immediate disconnection of patches is important to its business. However, given the extent that its operators must use the procedure and the inherent problems with the method employed for its performance, we cannot say that Eaton's failure to patch correctly on two occasions in two years can be considered recurring carelessness to such degree as to constitute disregard of her employer's interest. We conclude that the record does not contain substantial evidence supporting the agency's claim that Eaton was discharged for misconduct. Accordingly, Eaton is entitled to unemployment benefits.

AFFIRMED.