FARMERS COOP OIL ASSOCIATION and Farmland Mutual Insurance Company, Appellants,

v.

Harriet DEN HARTOG, Executor of the Estate of Larry Den Hartog, Deceased, Appellee.

No. 90–388.

Court of Appeals of Iowa.

June 25, 1991.

Cecil L. Goettsch and D. Brian Scieszinski of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellants.

Joe Cosgrove of Yaneff & Cosgrove, Sioux City, for appellee.

Considered by OXBERGER, C.J., and HAYDEN and HABHAB, JJ.

OXBERGER, Chief Judge.

The district court affirmed a decision of the Industrial Commissioner which found that the decedent, Larry Den Hartog, sustained an injury that arose out of and in the course of his employment with petitioner Farmers Coop Oil Association and was entitled to workers' compensation benefits. The employer appealed. We affirm.

Larry began working for Farmers Coop Oil Association (Farmers) in Orange City, Iowa, on January 4, 1984. Larry had a history of alcoholism. In the past Larry had suffered blackouts, fainting episodes, and at least one grand mal seizure. William J. Muilenburg, the manager of Farmers, informed Larry that any evidence of drinking on the job would be grounds for immediate termination.

Farmers agreed to send Larry to a three day seminar presented by Farmland Industries on LP gas safety. The seminar was held Tuesday, May 15 to Thursday, May 17, 1984, in Kansas City, Missouri. Larry was to receive his usual wages for the time spent at the seminar, plus his out-of-pocket expenses for gas and meals.

On Sunday night, May 13, Larry told his wife, Harriet Den Hartog, that he did not feel well.

On Monday morning, May 14, Larry told his daughter he had a bad headache. Before he left town Larry went to the offices of Farmers and got an advance of $100 for travel expenses from Muilenburg's secretary. No advance had been authorized by Muilenburg. Larry then drove to Kansas City. He was assigned a room with another seminar participant. Larry later stated he went to bed about supper time.

On Tuesday morning, Larry's roommate got up and went to breakfast before Larry was up. Larry stated that the roommate had invited him to go to breakfast, but he felt too sick to get up then. When Larry did not attend the seminar that morning, a representative of the school went to check on him and found Larry was not in his room and had taken his belongings with him.

There is no evidence of Larry's whereabouts between 7:00 a.m. May 15 through 9:00 a.m. May 16.

At about 9:00 a.m. Wednesday morning, May 16, Larry was involved in a single-vehicle accident at a location approximately 100 miles north of Kansas City. Larry's vehicle abruptly left the road and ran into a concrete bridge pillar. Larry suffered serious injuries, including a fractured hip and spinal injury. Neither the patrol officer or the emergency room physician felt alcohol was involved in the accident. Larry had his suitcase and $86 with him. Larry stated he was on his way home from Kansas City at the time of the accident.

Larry never returned to work at Farmers. He could not perform moderate or heavy physical labor as required by his previous job as a truck driver for Farmers. Larry was able to perform light sedentary work by November 1, 1984. He took a job as a dispatcher with the Sioux County Sheriff's Department and he worked there until June 23, 1985. Larry died on September 8, 1985, of causes not related to the injury on May 16, 1984.

Larry filed the present workers' compensation claim before his death. Larry's widow, Harriet, proceeded with the case after his death. Farmers and its workers' compensation insurance carrier, Farmland Mutual Insurance Company, refused to pay benefits or medical expenses. They believed Larry had sufficiently deviated from his employment by not attending the seminar that he was no longer acting within his employment at the time of his injury.

An administrative hearing was held on May 20, 1987. A deputy Industrial Commissioner issued his arbitration decision on March 4, 1988. The deputy determined that Larry's injury arose out of and in the course of his employment. The deputy found that alcohol was not a substantial factor in causing the injury. Larry's estate was awarded healing period benefits, permanent partial disability benefits, and medical expenses. The Industrial Commissioner affirmed the deputy on August 25, 1989.

The employer filed a petition for judicial review. The district court held that the commissioner's decision was supported by substantial evidence. The court affirmed the agency decision. Farmers appealed.

I. The scope of review in cases arising out of the Iowa Administrative Procedures Act is limited to the corrections of errors at law. *Foods, Inc. v. Iowa Civil Rights Commission*, 318 N.W.2d 162, 165 (Iowa App.1982). A district court decision rendered in an appellate capacity is reviewed to determine whether the district court correctly applied the law. *Id.* To make that determination this court applies the standards of section 17A.19(8) to the agency action to determine whether our conclusions are the same as the district court's. *Jackson County Public Hospital v. Public Employment Relations Board*, 280 N.W.2d 426, 429–30 (Iowa 1979). The scope of review encompasses a review of the entire record and is not limited to the agency's findings. *Higgins v. Iowa Dept. of Job Service*, 350 N.W.2d 187, 191 (Iowa 1984).

Iowa Code section 17A.19(8)(f) provides in a contested case the court shall grant relief from an agency decision which is unsupported by substantial evidence made before the agency when that record is viewed as a whole. *Eaton v. Iowa Dept.*

*of Job Service,* 376 N.W.2d 915, 916–17 (Iowa App.1985). Evidence is substantial to support an agency's decision when a reasonable person would find it adequate to reach a conclusion. *Id.* at 917. The question is not whether the evidence might support a different finding but whether the evidence supports the findings actually made. *Henry v. Iowa Dept. of Job Service,* 391 N.W.2d 731 (Iowa App.1986). The fact that two inconsistent conclusions can be drawn from the evidence does not mean that one of those conclusions is unsupported by substantial evidence. *Id.*

■ II. Farmers first contends that there is not substantial evidence in the record to support the commissioner's finding that Larry's injury arose out of and in the course of his employment. Farmers argues that because Larry did not attend the seminar and was returning to Orange City a day early, he had deviated from his employment at the time of the injury.

■ When an employee is sent on a special mission apart from his usual employment, the coming and going time of such a mission is implied to be within the course of employment. *Bulman v. Sanitary Farm Dairies,* 247 Iowa 488, 494, 73 N.W.2d 27, 30 (1955). However, if an employee deviates sufficiently from the line of duty so that his or her actions are foreign to the employer's work, this may take the employee outside the course of employment. *Sheerin v. Holin Co.,* 380 N.W.2d 415, 417 (Iowa 1986). If, after deviating from the employment or a temporary abandonment, the employee returns to the employment, starts the return trip home, and is injured, the injury is compensable. *Lamb v. Standard Oil Co.,* 250 Iowa 911, 916, 96 N.W.2d 730, 733 (1959).

This case is somewhat difficult because there is no evidence in the record to show what Larry's activities were between 7:00 a.m. May 15 and 9:00 a.m. May 16, 1984.

Because Larry was sent on a special mission by his employer, the presumption is that his return trip was in the course of his employment. There is no evidence to show that Larry deviated from his employment. There is no evidence that Larry had been drinking or that alcohol was involved in the accident. Considering Larry's expenses for gas and meals, the fact that he had $86 of the $100 he took with him tends to show that he had not been engaged in Bacchanalian pursuits as implied by the employer.[1] We believe there was substantial evidence in the record to show that Larry was acting in the course of his employment at the time of his injury.

III. Farmers also contends that the district court did not properly apply the burden of proof in this case to require Larry's estate to prove that he was acting within the scope of his employment at the time of the injury.

■ Larry's estate had the burden of proving by a preponderance of the evidence that his injury arose out of and in the course of his employment. *McDowell v. Town of Clarksville,* 241 N.W.2d 904, 907 (Iowa 1976). The employer has the burden of proving the affirmative defense that alcohol was a substantial factor in causing the injury. *Reddick v. Grand Union Tea Co.,* 230 Iowa 108, 115, 296 N.W. 800, 803 (1941).

We note that the district court and the commissioner set forth the correct law on this issue. The claimant brought forth evidence to show that Larry went to Kansas City as part of his employment and that the return trip must be considered a part of the employment. We believe that the district court did not err as a matter of law on this issue.

■ IV. Finally, Farmers contends that the district court erred by amending the commissioner's findings of fact without remanding this action. The commissioner

---

1. *See Bush v. Parmenter, Forsythe, Rude & Dethmers,* 413 Mich. 444, 320 N.W.2d 858 (1982). The character of the deviation, except in its relation to business or to the increase of risk of injury, is immaterial. *Id.* at 863. In fact it might be said that workers' compensation, like the gentle rain from heaven, falls upon the just and the unjust alike so long as the injury arose out of and in the employment ambiance. *Thomas v. Certified Refrigeration, Inc.,* 392 Mich. 623, 221 N.W.2d 378, 385 (1974).

made a factual finding that Larry had testified he was sick on the morning of May 16, 1984. The district court found this was merely a clerical error, and affirmed the commissioner's decision with the understanding the relevant date was May 15, not May 16.

We affirm the district court's action. The commissioner adopted the deputy's factual findings and the deputy correctly found that Larry testified he was sick on the morning of May 15. The commissioner correctly found there was no evidence of Larry's whereabouts between 7:00 a.m. May 15 and 9:00 a.m. May 16. Thus, the commissioner was aware Larry had not testified he was sick on the morning of May 16. We believe this single finding by the commissioner was a clerical error.

V. We affirm the decisions of the district court and the Industrial Commissioner awarding workers' compensation benefits to the estate of Larry Den Hartog.

AFFIRMED.