Don N. WEST, Appellant,

v.

EMPLOYMENT APPEAL BOARD, DEPARTMENT OF INSPECTIONS AND APPEALS, and Buffalo Center Community School District, Appellees.

No. 91–1228.

Supreme Court of Iowa.

Sept. 23, 1992.

Mark S. Soldat, Algona, for appellant.

Joe E. Smith, Des Moines, and Thomas W. Lipps, Peterson & Lipps, Algona, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

LAVORATO, Justice.

In this judicial review proceeding involving unemployment benefits, the agency denied the claimant benefits. The agency denied benefits because it found that the employer had discharged the claimant for misconduct based on the claimant's alleged refusal to answer the employer's questions. On our review, we find no support for this finding. For this reason, we reverse the district court's decision that affirmed the agency's action denying benefits.

In addition, we reverse the district court's taxation of court costs to the claimant. We tax those costs of appeal relating to portions of the appendix we find excessive to the claimant. All other costs on appeal are taxed to the agency and the employer.

Don N. West, the claimant, was under contract to the Buffalo Center Community School District as a school superintendent for one year beginning July 1, 1989. In January 1990, the school district's board held two meetings regarding West's continued tenure with the school district. At the first meeting, the board evaluated West and found his performance unsatisfactory.

At the second meeting on January 10, the board gave West a chance to go into executive session before the board questioned him about his conduct in office. West refused, insisting that the board ask its questions—thirty-eight in all—in an open meeting before a large entourage of interested citizens.

The board then attempted to question West, but he refused to answer any of the inquiries, stating that "[he] would answer them at a hearing or a court of law."

At the close of the meeting, the board voted to consider terminating West's contract. *See* Iowa Code § 279.24 (1989) (According to Iowa Code section 279.24,

West's contract would automatically be extended for one year beyond the contract's terms unless terminated as provided in section 279.24.). He was notified of this at the end of January. Pursuant to section 279.-24, West had a hearing before an administrative law judge (ALJ) in March 1990. After a six-day hearing—during which West responded to questioning—the ALJ determined that West could be dismissed after his contract expired on June 30, 1990.

On April 30, 1990, the board voted to dismiss West, effective June 30, 1990. West's duties were transferred to the school principal on May 15, 1990.

In a separate proceeding, West immediately applied for unemployment benefits under Iowa Code chapter 96. In the claim form for unemployment benefits, four choices related to separation are listed: (1) "laid off for lack of work," (2) "quit," (3) "discharged," and (4) "labor dispute." West chose number (3): "discharged."

The board president, on behalf of the school district, protested West's claim for unemployment benefits on the ground that West "was discharged [on 5/15/90] for misconduct in connection with work." In its protest, the school district gave a number of reasons for West's "discharge." All of these reasons centered on his past unsatisfactory performance. No mention was made about West's refusal to answer the board's thirty-eight questions at the second meeting the previous January.

In a terse decision, the claims representative found that the school district had failed to furnish sufficient evidence of misconduct. For this reason, the representative imposed no permanent disqualification on West regarding benefits.

The school district appealed and asked for an evidentiary hearing. The hearing was by telephone before a separate ALJ in the unemployment benefit proceeding. The school district had the opportunity to expand upon the facts alleged in its protest to the claims representative. The board president testified at length. His testimony was a consistent expansion of his statements in the school district's protest of

West's claim. All of these statements centered on West's alleged unsatisfactory performance. But none included West's refusal to answer the board's thirty-eight questions in the prior January 10 meeting.

The inquiry about this refusal came from the ALJ in this exchange:

ALJ: Were you at the meeting on January 10th of this year? WEST: Yes.

ALJ: And did you, at that time, refuse to answer the 38 questions we've heard about? WEST: I said that I would answer them at a hearing.

ALJ: What—hang on. Well, did you have an opportunity at that meeting to answer those 38 questions? WEST: Oh, it was a very—did I have an opportunity?

ALJ: Yes. WEST: I—they asked me if I wanted to respond, yes.

ALJ: And did you refuse? WEST: Yes, I did.

ALJ: All right. And what else did you say as far as when you would answer those questions? WEST: I said I would answer those at a hearing or a court of law.

ALJ: And what was the purpose of that? WEST: There was about a hundred and some citizens there. The questions were framed in such a way as to make the question, if you answered it, made you think that you were guilty by the way [they] asked the question—

ALJ: Is it true—WEST: And I did not think that was proper.

ALJ: Is it true you had the chance to go into an executive private session? WEST: Yes.

ALJ: And did you refuse that? WEST: Yes.

ALJ: Well, why didn't you go into the private session and answer them in private? WEST: Because they, in my opinion, had their mind already made up when they asked me to resign on November 28, and then did an evaluation in January.

The ALJ reversed the claims representative's decision, finding that West had been discharged for a specific instance of misconduct: his refusal to answer the thirty-eight questions propounded by the school

district's board on January 10, 1990. The employment appeal board affirmed the ALJ's proposed agency decision following West's appeal to it. West's petition for rehearing was denied by the appeal board.

West then filed a petition for judicial review in the district court. The district court affirmed, finding substantial evidence in the record to support the appeal board's decision. It is from the district court's ruling that West appeals.

I. Judicial review of agency determinations regarding unemployment compensation benefits is governed exclusively by the Iowa Administrative Procedure Act. Iowa Code §§ 17A.19; 96.6(3). Our review of the district court's decision is at law. Iowa Code § 17A.20; *Hy–Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n*, 453 N.W.2d 512, 515 (Iowa 1990).

Under the mandate of section 17A.19, the district court acted as an appellate court to correct errors of law that section 17A.19(8)(f) specifies for contested cases such as this one. We must decide whether the district court correctly applied the law. *Hy–Vee*, 453 N.W.2d at 515.

Our review in this regard is bounded by the final record made before the agency. Iowa Code § 17A.19(8)(f); *Hussein v. Tama Meat Packing Corp.*, 394 N.W.2d 340, 341 (Iowa 1986). In determining whether the district court applied the law correctly, we inquire whether the agency's findings of fact are supported by substantial evidence when the agency record is viewed as a whole. Iowa Code § 17A.19(8)(f); *Hy–Vee*, 453 N.W.2d at 515.

Evidence is substantial if "a reasonable person would find it adequate to reach a given conclusion, even if we might draw a contrary inference." *Id.* at 515–16 (citation omitted). If we determine that the agency's findings of fact are supported by substantial evidence, we are bound by those findings and must affirm. *Hussein*, 394 N.W.2d at 341. If we find the facts unsupported by substantial evidence, we reverse. *Hy–Vee*, 453 N.W.2d at 515.

II. We assume, without deciding, that West was discharged. Iowa Code sec-

tion 96.5(2) disqualifies a claimant from receiving unemployment benefits "[i]f the division of job service finds that the individual has been discharged for misconduct in connection with the individual's employment." The employer has the burden of proof on this issue. *Cosper v. Iowa Dep't of Job Serv.*, 321 N.W.2d 6, 11 (Iowa 1982).

Chapter 96 does not define discharge or misconduct. These definitions are found in the Iowa Administrative Code. "Discharge" is defined as

[a] termination of employment initiated by the employer for such reasons as incompetence, violation of rules, dishonesty, laziness, absenteeism, insubordination, failure to pass probationary period.

345 Iowa Admin.Code 4.1(113)(c) (1990).

"Misconduct" is defined as

a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

345 Iowa Admin.Code 4.32(1)(a) (1988).

We agree that under section 96.5(2) [d]ischarging an unsatisfactory employee is a managerial prerogative of the employer, but to sustain a charge of misconduct it is necessary to establish that the claimant willfully and intentionally committed an act or acts that were detrimental to the best interests of the employer. *There must be a direct causal relation between the misconduct and the discharge.*

Note, *The Iowa Employment Security Act—Unemployment Compensation,* 11 Drake L.Rev. 125, 133–34 (1962) (emphasis added). Simply put, we think an employer must establish that the employer discharged the claimant *because of a specific act or acts* of misconduct. We said as much in a case decided after the district court ruled against West. *See Larson v. Employment Appeal Bd.,* 474 N.W.2d 570, 572 (Iowa 1991) (record revealed claimant was fired for incompetence; claim that she was fired for deceit was supplied by agency post hoc).

We find no evidence in the record that West's discharge was for anything more onerous than poor performance. There certainly was no evidence that he was discharged for refusing to answer the school district board's questions at the January 10, 1990, meeting. The appeal board's finding to the contrary was not supported by substantial evidence. Hence the district court's decision upholding the appeal board's determination was error and must be reversed. We remand the case to the district court for entry of judgment directing the award of benefits.

Because the school district failed to prove a direct causal connection between the discharge and West's refusal to answer the questions, we do not reach the issue whether such refusal constitutes misconduct.

III. Both parties agree that the district court's assessment of court costs against West was error, and it was. *See* Iowa Code § 96.15(2); *Geiken v. Lutheran Home for the Aged Ass'n,* 468 N.W.2d 223, 226–27 (Iowa 1991). That portion of the court's decision is also reversed. On remand the district court's judgment shall delete any assessment of court costs against West.

IV. We agree with the appeal board and the school district that West

submitted an appendix excessive in length. Two hundred and twenty-two pages of the appendix were not necessary under Iowa Rule of Appellate Procedure 15(a). Costs for printing these pages are taxed to West. All other costs of appeal are taxed to the appeal board and the school district.

REVERSED AND REMANDED WITH DIRECTIONS.